**THE LAW OFFICE OF PAUL P. YOUNG**
**Paul Philip Young (SBN: 257571)**
**2667 E. Colorado Blvd.-Suite B**
**Pasadena, CA 91107**
**paul@paulyounglaw.com**
**Tel:  (626)744-1838**
**Fax:  (626) 744-3167**
**Attorneys for RPA INTERNATIONAL PTY LTD.**
 **dba NUFURN PTY LTD., NUFURN INC., and**
**DENNIS MICHAEL KRAWCHUK, Creditors**

### UNITED STATES BANKRUPTCY COURT

### CENTRAL DISTRICT OF CALIFORNIA, LOS ANGELES DIVISION

| | |
|---|---|
| In re<br><br><br>**COMPACT INTERNATIONAL, INC.,**<br><br><br>Debtor(s). | Case No.: 2:11-bk-48064-VZ<br><br>Chapter 11<br><br>**MOTION FOR THE APPOINTMENT OF A CHAPTER 11 TRUSTEE; OR IN THE ALTERNATIVE, FOR THE APPOINTMENT OF AN EXAMINER *AND* THE CONTINUATION OF THE PRE-PETITION RECEIVER; MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT THEREOF; DECLARATIONS OF PAUL P. YOUNG, ANDREA D. CHAN AND LIDIA MARTINEZ**<br><br>Date:  November 8, 2011<br>Time:  11:00 a.m.<br>Ctrm:  1368<br>       255 E. Temple Street<br>       Los Angeles, CA 90012 |

**TO THE HONORABLE VINCENT ZURZOLO, UNITED STATES BANKRUPTCY JUDGE; THE DEBTOR AND ITS ATTORNEY OF RECORD; THE OFFICE OF THE UNITED STATES TRUSTEE; AND ALL INTERESTED PARTIES:**

RPA INTERNATIONAL PTY LTD. dba NUFURN PTY. LTD., NUFURN INC. and DENNIS MICHAEL KRAWCHUK (collectively, "Movants"), judgment creditors of Compact International, Inc. ("Debtor"), will and hereby do move the Court for an Order granting the following relief:

    1.    Appointing a trustee under 11 U.S.C. § 1104(a).

1

2. In the alternative, appointing an examiner to investigate and report on the Debtor's operations under 11 U.S.C. § 1104(c), *paired with* the continuation of the pre-petition receiver under 11 U.S.C. § 543(d) to ensure appropriate operation of the Debtor's business pending the report of the examiner.

This Motion is made under the referenced provisions of the Bankruptcy Code, on the basis that "cause" exists for the requested relief by virtue of the gross mismanagement of the Debtor; the extreme and systemic self-dealing of the Debtor's principal and his affiliates; the apparent violations of state and federal labor, employment and other laws; the appearance of avoidable transfers which the Debtor's principals will have no motivation to pursue; and the diversion of the Debtor's revenues away from its creditors. The best interests of all creditors require that someone other than the Debtor as debtor-in-possession operate the Debtor's business, investigate inappropriate and potentially avoidable transfers, and establish the Debtor's ongoing viability.

This Motion is based upon this Motion, the accompanying Notice of Motion, the attached Memorandum of Points and Authorities, the attached Declarations of Paul P. Young, Andrea D. Chan, and Lidia Martinez, and the exhibits and other evidence attached and referred to therein, the concurrently-filed Request for Judicial Notice and exhibits attached thereto, and upon such other and further evidence as the Court may consider in connection with this matter.

**PLEASE TAKE FURTHER NOTICE** that Local Bankruptcy Rule 9013-1(f) requires that each party interested in opposing, joining or responding to this Motion file a formal response at least fourteen (14) days before the hearing. Under Local Bankruptcy Rule 9013-1(h), papers not timely filed and served may be deemed by the Court to be consent to the granting of the relief requested in this Motion.

**RESPECTFULLY SUBMITTED,**

Date: September 20, 2011        LAW OFFICE OF PAUL P. YOUNG

By: /s/ Paul P. Young
    Paul P. Young
    Attorney for Judgment Creditor
    Attorneys for Movants

# **TABLE OF CONTENTS**

**TABLE OF CONTENTS** .................................................................................................. **i**

**TABLE OF AUTHORITIES** ........................................................................................... **ii**

**TABLE OF EXHIBITS** ................................................................................................... **iii**

**MEMORANDUM OF POINTS AND AUTHORITIES** ..................................................... **1**

**I.    SUMMARY OF THE CASE, AND OF THE RELIEF SOUGHT** ........................ **1**

**II.   FACTUAL BACKGROUND** ................................................................................ **1**

**III.  FINDINGS OF THE RECEIVER** ........................................................................ **4**

**IV.  GROUNDS EXIST FOR THE APPOINTMENT OF A CHAPTER 11 TRUSTEE** ............................................................... **6**

    **A.    Standards for Appointment of Trustee** ...................................................... **6**

    **B.    "Cause" for the Appointment of a Trustee** ................................................ **7**

    **C.    Appointment of a Trustee in the "Interests of Creditors"** ......................... **8**

**V.   GROUNDS EXIST FOR THE APPOINTMENT OF AN EXAMINER** ............... **9**

**VI.  GROUNDS EXIST TO LEAVE THE RECEIVER IN PLACE PENDING AN EXAMINER'S REPORT** ............................................................. **10**

**VII. CONCLUSION** .................................................................................................... **12**

**DECLARATION OF ANDREA D. CHAN** ..................................................................... **13**

**DECLARATION OF LIDIA MARTINEZ** ...................................................................... **16**

**DECLARATION OF PAUL P. YOUNG** ........................................................................ **20**

# TABLE OF AUTHORITIES

**Bankruptcy Code Provisions**

11 U.S.C. § 101(10)(A) ............................................................................................................ 10

11 U.S.C. § 543(b)(1) ............................................................................................................... 10

11 U.S.C. § 543(d) ................................................................................................................ 1, 10

11 U.S.C. § 1104(a) ........................................................................................................ 1, 6, 7, 8

11 U.S.C. § 1104(c) ................................................................................................................ 1, 9

11 U.S.C. § 1107(a) .................................................................................................................. 10


**United States Supreme Court Cases**

Grogan v. Garner, 498 U.S. 279, 286, 111 S.Ct. 654, 659 (1991) .............................................. 6


**Other Federal Cases**

In re Bellevue Place Associates, 171 B.R. 615, 624 (Bkrtcy. N.D. Ill. 1994) ............................. 8

In re Bryant Manor, LLC, 422 B.R. 278 (Bkrtcy. D.Kan. 2010) .............................................. 10

In re Cedar Falls Hotel Properties Ltd. Partnership, 102 B.R. 1009, 1017
        (Bkrtcy. N.D. Iowa 1989) .............................................................................................. 11

In re Colby Const. Corp., 51 B.R. 113, 116 fn. 2 (Bkrtcy. N.Y. 1985) ....................................... 6

In re Concord Coal Corp., 11 B.R. 552, 554-55 (Bkrtcy. W.Va. 1981) ..................................... 8

In re KCC-Fund V, Ltd., 96 B.R. 237, 240 (Bkrtcy. W.D. Mo. 1989) ..................................... 12

In re Northgate Terrace Apartments, Ltd., 117 B.R. 328, 332 (Bkrtcy. S.D. Ohio 1990) ........ 10

In re Poplar Springs Apartment of Atlanta, Ltd., 103 B.R. 146, 150
        (Bkrtcy. S.D. Ohio 1989) ............................................................................................... 10

In re Powers Aero Marine Services, Inc., 42 B.R. 540, 544 (Bkrtcy. Tex. 1984) .................... 10

In re Sharon Steel Corp., 871 F.2d 1217, 1228-1229 (3rd Cir. 1989) ........................................ 7

In re Sundance Corp., 83 B.R. 746, 749 (Bkrtcy. D. Mont. 1988) ..................................... 11  12

In re Watkins, 63 B.R. 46, 48 (Bkrtcy. D. Colo. 1986) ............................................................ 10

## **TABLE OF EXHIBITS**

| Exhibit | Description |
|---|---|
| **1** | Website Screen Capture (Chan Declaration) |
| **2** | Debtor's Voluntary Petition and List of Creditors Holding 20 Largest Unsecured Claims (Request for Judicial Notice) |
| **3** | Final Judgment in Patent Action (Request for Judicial Notice) |
| **4** | Certification of a Judgment to be Registered in Another District in the Enforcement Action (Request for Judicial Notice) |
| **5** | Receivership Order in Enforcement Action (Request for Judicial Notice) |
| **6** | Receivership Declaration and Curriculum Vitae of Andrea D. Chan (Chan Declaration) |
| **7** | Collection of invoices and deposit information reflecting deposits into Seats R Us account (Chan Declaration) |
| **8** | Nevada Certificate of Status (Chan Declaration) |
| **9** | August 2011 Seats R Us Bank Statement (Chan Declaration) |
| **10** | Astral Property expenses paid by Debtor (Chan Declaration) |
| **11** | Palmcourt checks paid by Debtor (Chan Declaration) |

# MEMORANDUM OF POINTS AND AUTHORITIES

**I.  SUMMARY OF THE CASE, AND OF THE RELIEF SOUGHT.**

The Debtor filed its Voluntary Petition the day after the installation of a state court receiver at its business premises. Movant, an unsecured creditor, was the party that sought the appointment of the receiver. Considering the timing of the filing, and the evidence of extreme misconduct uncovered by the receiver, there can be little doubt that the filing was *not* an expression of intent by the Debtor's principals to reorganize, but rather, was aimed at recovering control from the receiver so that the principals and their related entities can continue to line their own pockets, at the expense of the Debtor's creditors.

Movant requests that the Court block the return of control of the Debtor and its assets to the insiders who have engaged in inappropriate conduct. Movant seeks:

1. The appointment of a trustee under 11 U.S.C. § 1104(a), to take control of the Debtor's operations, investigate and correct any mismanagement, analyze potential avoidable transfers, and establish whether a viable platform for reorganization exists which will treat all creditors fairly.

2. In the alternative, the appointment of an examiner to investigate and report on the Debtor's operations under 11 U.S.C. § 1104(c), paired with the continuation of the receiver under 11 U.S.C. § 543(d) to ensure appropriate operation of the Debtor's business pending the report of the examiner.

**II.  FACTUAL BACKGROUND.**

1. The Debtor is a California corporation which engages in the business of selling commercial and industrial furniture. Its own website at "compactintl.com" describes it as "a leading supplier of tables, chairs, and commercial furniture to hotels, convention centers, churches, and similar institutions throughout the US. We also have a wide range of durable educational furniture for public and private schools." (Website Screen Capture, "compactintl.com", Exhibit "1" to the Declaration of Paul P. Young.)

///

2. The Debtor's records indicate that the Debtor historically has done business under the fictitious business name of "Chairs & Tables Direct", sometimes abbreviated "CT Direct". No fictitious business name statement has been found under these names. (Declaration of Andrea D. Chan.)

3. The Debtor's List of Creditors Holding 20 Largest Unsecured Claims ("List of Creditors"), filed along with the Petition in this case, consists of only eight (8) creditors, with claims ranging from $3,000 to $45,000, for total debt of $89,095. (Voluntary Petition and List of Creditors, Exhibit "2" to the Request for Judicial Notice.) The largest pre-petition unsecured creditor group, by a wide margin, consists of Movants, with a claim listed at $45,000. The next-largest claim reflected on the List of Creditors is a $14,400 claim owed to Moster Corp.

4. The Debtor has not yet filed its schedules or Statement of Financial Affairs.

5. On or about May 20, 2006, Movants filed a Complaint for Patent Infringement under 35 U.S.C. §§ 271 *et seq.* in the United States District Court, Southern District of California, initiating Case No. 06CV-1147 ("Patent Action"). On February 7, 2011, a Final Judgment was entered in the Patent Action in favor of Movants and against the Debtor, its principal, Johnson, and others, in the principal amount of $51,205 for patent infringement. (Final Judgment, Exhibit "3" to the Request for Judicial Notice.)

6. After the judgment debtors failed and refused to satisfy the judgment, and efforts to resolve the judgment amicably failed, Movants filed a Clerk's Certification of a Judgment to be Registered in Another District, initiating Case No. 2:11-CV-03368-ABC in the United States District Court, Central District of California ("Enforcement Action"). (Certification, Exhibit "4" to the Request for Judicial Notice.) The purpose of the Enforcement Action was to register the Final Judgment in the local district so that Movants could exercise their enforcement remedies. (Declaration of Paul P. Young.)

7. On July 27, 2011, Movants filed a motion in the Enforcement Action seeking the appointment of a receiver. The motion was set for hearing on September 12, 2011. The time for responses passed, and no responses were filed. Therefore, the Court entered an Order Confirming Appointment of Receiver in Aid of Execution to Enforce Judgment ("Receivership

2

1  Order") in chambers on August 23, 2011.  (Receivership Order, Exhibit "5" to the Request for

2  Judicial Notice.)  The Receivership Order confirmed the appointment of Andrea Dorothy Chan

3  ("Receiver") as receiver.

4        8.     The Receiver entered the Debtor's business premises on September 6, 2011.  The

5  Receiver had arranged for security personnel to accompany her, and there were loud protests to

6  her assumption of control.  They were quickly and peacefully overcome, and the Receiver

7  immediately began the tasks outlined in the Receivership Order.

8        9.     The Receiver has worked successfully with the Debtor's employees in operating

9  the Debtor's business, and in investigating its financial affairs.  (Declarations of Andrea D. Chan

10 and Lidia Martinez.)

11      10.    The following day, September 7, 2011, the Debtor filed its Voluntary Petition

12 under Chapter 11.  (Voluntary Petition, Exhibit "2" to the Request for Judicial Notice.)

13      11.    Upon notification of the bankruptcy filing, Movants' counsel advised the Debtor's

14 principals and counsel of his intent to seek the appointment of a trustee or examiner.

15 (Declaration of Paul P. Young.)

16      12.    The declaration of the Receiver relating to her qualifications, background and lack

17 of conflicting interest, is attached as Exhibit "6" to the Declaration of Andrea D. Chan.  While

18 nominated by Movants in the Enforcement Action, she has no affiliation with any party in this

19 action, and has approached her duties neutrally and according to the directions provided in the

20 Receivership Order.  The Receiver has no interests which would be adverse to the Debtor, its

21 principals or affiliates.

22      13.    On September 6, 2011 at the scheduled debtor examination in the Enforcement

23 Action of Johnson (who failed to appear), Johnson's attorney, Mark Goodfriend, stated on the

24 record to Magistrate Judge Alicia Rosenberg of the United States District Court, Central District

25 of California, Western Division, that "Compact [the Debtor] had been out of business for

26 months".

27      14.    As is shown by the Declarations of Andrea D. Chan and Lidia Martinez, this is

28 not true, as the Debtor's staff remains in place, the Debtor's name is used in answering the

3

1 telephone, the Debtor's name continues to be used by customers in paying invoices, the Debtor's
2 bank account remains open and is used to pay expenses, and the Debtor still generates daily sales
3 reports -- despite the serious diversion of the Debtor's revenues.

4

5 **III.    FINDINGS OF THE RECEIVER.**

6 In the Receiver's brief tenure, she has identified four areas of major concern relating to
7 the financial condition of the Debtor:

8 1.    <u>Sales and revenues are being diverted from the Debtor to another entity of which
9 Lee Johnson is a principal, Seats R Us, Inc</u>.  Over the past two years, large withdrawals have
10 been made out of the Debtor's bank account, and have been deposited into a Seats R Us account.
11 The check memo for some of these transfers reads "deposit", but no documents have been found
12 among the Debtor's records which would provide the basis for the payment of a deposit by the
13 Debtor to Seats R Us.  Many of the larger transfers have been accomplished by the purchase of a
14 cashier's check using funds on deposit in the Debtor's account, and the deposit of that check into
15 a Seats R Us account.  In addition, checks which have been issued by customers in payment of
16 the Debtor's invoices (either under Compact International or its "dba", Chairs & Tables Direct /
17 CT Direct) have been deposited directly into a Seats R Us account.  Attached as Exhibit "7" to
18 the Declaration of Andrea D. Chan is a collection of invoice and deposit information showing the
19 pattern based upon the investigation done to date.  The review of the records is not complete.
20 However, the attached documents show that the transfers from the Debtor's account to Seats R
21 Us were in the *hundreds of thousands of dollars* in 2009 (the review of 2010 data is not
22 complete), the deposit of the Debtor's customer checks into a Seats R Us account is substantial,
23 and the pattern continues, with receipts as recently as August 2011 being deposited into a Seats
24 Re Us account.

25 2.    <u>There are significant irregularities in the Debtor's employment and tax affairs</u>.
26 The Debtor maintains no payroll or employee records, employee contracts or worker's
27 compensation records.  Employees are not properly reported under the Debtor's worker's
28 compensation insurance, and are routinely paid "under the table".  (Declarations of Andrea D.

4

1  Chan and Lidia Martinez.)  These payments do not appear to be reported to the appropriate
2  taxing authorities; in some cases, taxes are "withheld" from employee pay for taxes, but the
3  employees are not reported, nor is the withholding turned over to the taxing authorities.  The
4  State of Nevada revoked the Debtor's authority to do business in that state in 2010, on the basis
5  of tax evasion and tax fraud.  (*See* Certificate of Status, Exhibit "8" to the Declaration of Andrea
6  D. Chan.)  Employees have been instructed to prepare invoices only when requested by the
7  customer, which appears to set up the basis for "off the book" cash sales, which would never be
8  reflected in the Debtor's records, and would not be included in sales reports used to prepare tax
9  returns.  Cash receipts are transmitted to Johnson directly.  (Declaration of Lidia Martinez.)
10         3.    <u>The Debtor's business attributes have been "appropriated" by Seats R Us</u>.  As is
11  shown by the Declaration of Lidia Martinez, the Debtor remains "open for business", but the
12  business that comes in has been deflected to Seats R Us.  A copy of the Seats R Us bank
13  statement for August 2011, attached as Exhibit "9" to the Declaration of Andrea D. Chan, along
14  with Ms. Martinez's declaration, show (1) Seats R Us has appropriated the Debtor's trade name
15  of "Chairs + Tables Direct"; (2) it has no separate business address or phone number, but uses
16  the Debtor's facilities, staff, credit card processing system, seller's permit and e-mail system – at
17  the Debtor's expense; and (3) substantial deposits are made into its account, which appear to
18  come from the sales generated through the Debtor.  The title to a truck in the name of the Debtor
19  was transferred to Seats R Us on or about August 10-11, 2011.  The Debtor's records show no
20  consideration for that transfer.  Otherwise, the Debtor's books and records show no formal
21  transfer of the Debtor's business attributes to Seats R Us, and no consideration for any such
22  transfer.
23         4.    <u>Johnson routinely and regularly pays personal expenses out of the Debtor's</u>
24  <u>account</u>.  Revenues of the Debtor are being used to pay for the maintenance and upkeep of real
25  property located at 2635 Astral, Hollywood Hills, California ("Astral Property").  Invoices paid
26  by the Debtor related to that property include pool service, gardening, maintenance, pest control,
27  mold inspections, utilities and building materials.  Copies of sample invoices are attached as
28  Exhibit "10" to the Declaration of Andrea D. Chan.  The Debtor's books and records do not

5

reflect that the Debtor owns any interest in the Astral Property. That property is believed to be owned personally by Johnson. There are also payments for insurance, maintenance and construction at other real properties in which the Debtor has no interest, which are also believed to be owned by Johnson and/or his wholly-owned entities. There are payments to individuals and entities who have no known affiliation with the Debtor. For instance, the Debtor made quarterly payments of $1,700 to "Palmcourt" throughout 2009 and 2010. Copies of checks are attached as Exhibit "11" to the Declaration of Andrea D. Chan. The Debtor has no known interest in that property. There are numerous other instances of such payments, continuing to the present.

## IV. GROUNDS EXIST FOR THE APPOINTMENT OF A CHAPTER 11 TRUSTEE.

### A. Standards for Appointment of a Trustee.

The Bankruptcy Code, at 11 U.S.C. § 1104(a), provides that:

> (a) At any time after the commencement of the case but before confirmation of a plan, on request of a party in interest or the United States trustee, and after notice and a hearing, the court shall order the appointment of a trustee—
>
> (1) for cause, including fraud, dishonesty, incompetence, or gross mismanagement of the affairs of the debtor by current management, either before or after the commencement of the case, or similar cause, but not including the number of holders of securities of the debtor or the amount of assets or liabilities of the debtor; or
>
> (2) if such appointment is in the interests of creditors, any equity security holders, and other interests of the estate, without regard to the number of holders of securities of the debtor or the amount of assets or liabilities of the debtor.

While the party seeking the appointment of a trustee bears the burden of proof, in the absence of an expression of Congressional intent to heighten the standard of proof, the preponderance of the evidence standard applies. In re Colby Const. Corp., 51 B.R. 113, 116 fn. 2 (Bkrtcy. N.Y. 1985); *see i.e.* Grogan v. Garner, 498 U.S. 279, 286, 111 S.Ct. 654, 659 (1991) ["The language of § 523 does not prescribe the standard of proof for the discharge exceptions. The legislative history of § 523 and its predecessor, 11 U.S.C. § 35 (1976 ed.), is also silent.

6

This silence is inconsistent with the view that Congress intended to require a special, heightened standard of proof."]

The grounds under § 1104(a) are stated in the disjunctive, and call for the appointment of a trustee if *either* "cause" exists, *or* "such appointment is in the interests of creditors."

### B. "Cause" Exists for the Appointment of a Trustee.

Section 1104(a)(1) lists examples of the "cause" that will warrant the appointment of a Chapter 11 trustee: "fraud, dishonesty, incompetence, or gross mismanagement of the affairs of the debtor by current management, either before or after the commencement of the case, or similar cause". From the final clause, it is evident that the list is intended to be illustrative, rather than exclusive, and that the determination is to be made on a case-by-case basis. Prepetition, as well as postpetition, conduct may serve as "cause". In re Sharon Steel Corp., 871 F.2d 1217, 1228-1229 (3rd Cir. 1989) ["…Sharon's management appears to have engaged on the eve of bankruptcy in a systematic syphoning of Sharon's assets to other companies under common control…. Corrective measures that are too few too late cannot defeat a change in command."]

In her short tenure, the Receiver has uncovered evidence of inappropriate, and possibly illicit, conduct with regard to the Debtor's operations. Johnson uses the Debtor as his personal "piggybank", appropriating the Debtor's revenues to pay the expenses of his other business interests. He has established another nearly-identical business to funnel off the Debtor's revenues, without paying the Debtor's debts. The Debtor's employment practices are highly irregular – employees are paid "off the books" without tax withholding or payment; and the withholding that is made is not turned over to the taxing authorities. Johnson has advised staff *not* to reflect sales and cash receipts; those sales will not show up in sales reports, and will therefore not be included in tax computation.

The Debtor's current management cannot be left in place. The degree of misconduct is so great that it is impossible to determine at the moment whether a viable business even exists beneath the web of shadow entities and transfers. The current management has no motivation to correct the situation. They are the substantial financial beneficiaries of the misconduct;

7

1   "stopping the madness" would deprive them of this income stream on an ongoing basis, and
2   investigating past misconduct would necessitate the investigation, and possible avoidance, of
3   transfers to themselves. Even if the current management could "clean up its act" on a go-
4   forward basis, there is a hopeless conflict of interest between the Estate and the current
5   management in the administration of this case in investigating past misconduct.
6        A Chapter 11 trustee could investigate further the Debtor's business dealings, pursue
7   avoidable transfers, and establish a platform for the submission of a Chapter 11 plan. If the
8   Debtor's current management is committed to a legitimate reorganization (even pursuant to a
9   liquidation plan), they can submit such a plan while the Debtor operates under a Chapter 11
10  trustee, who can work to maintain the "going concern" value of the Debtor and protect its assets.
11  "Cause" clearly exists in this case for the appointment of a trustee.
12
13       **C.    Appointment of a Trustee is in the "Interests of Creditors".**
14       Section 1104(a)(2) adds an alternative ground for the appointment of a Chapter 11
15  trustee: "such appointment is in the interests of creditors." Thus, factors such as a lack of
16  creditor confidence or conflicts of interest by management may serve as grounds for the
17  appointment of a trustee, even if the conduct of the debtor does not rise to the level of "cause".
18  In re Concord Coal Corp., 11 B.R. 552, 554-55 (Bkrtcy. W.Va. 1981) ["The loyalty of Mr.
19  Walsh to the Debtor's rehabilitation is substantially called into question by his many competing
20  business interests and the potential for inter-company dealing which favors those he owns
21  outright. … Under these circumstances, it is highly improbable that the Debtor can gain and
22  maintain the confidence of secured creditors and lenders in sufficient measure to support
23  rehabilitation."]; In re Bellevue Place Associates, 171 B.R. 615, 624 (Bkrtcy. N.D. Ill. 1994)
24  ["The Master Agreement allows [secured creditor] Meridien, through its control of BPA, to act
25  solely in Meridien's self interest without resort to BPA's interest, and, thus, raises the specter of
26  Meridien self-dealing."]
27       If the List of Creditors is to be believed, the Debtor has very few creditors and limited
28  debt. Considering the Debtor's historical revenues, it is unclear why these creditors are not

8

being paid – and why the Debtor is in bankruptcy. Creditors have every reason to lack confidence that the Debtor's principal can set aside his self interest in syphoning the Debtor's funds to support his other business interests, to structure a plan providing for the orderly payment of creditors of this Estate. In light of the conduct uncovered by the Receiver, Movants suspect that the List of Creditors is *not* accurate, and that the debt is significantly higher. In any case, there is no trust in the Debtor's principal, which will impair the Debtor's efforts to reorganize, as Movants and other creditors are likely to doubt and question the Debtor's conduct throughout this case. The creditors of this Estate deserve a reliable fiduciary at the helm of the Debtor while the process of reorganization is worked out.

## V.    GROUNDS EXIST FOR THE APPOINTMENT OF AN EXAMINER.

As a less drastic alternative to the appointment of a Chapter 11 trustee, 11 U.S.C. § 1104(c) provides:

> [T]he court shall order the appointment of an examiner to conduct such an investigation of the debtor as is appropriate, including an investigation of any allegations of fraud, dishonesty, incompetence, misconduct, mismanagement, or irregularity in the management of the affairs of the debtor of or by current or former management of the debtor, if—
>
> (1)    such appointment is in the interests of creditors, any equity security holders, and other interests of the estate; or
>
> (2)    the debtor's fixed, liquidated, unsecured debts, other than debts for goods, services, or taxes, or owing to an insider, exceed $5,000,000.

Movants are aware that early in a Chapter 11 case courts often give a debtor's management the benefit of the doubt. Movants firmly believe that the Debtor's management does not deserve such a concession. However, to the extent that the Court opts to allow the Debtor to remain in possession for the time being, Movants assert that it is in the best interests of creditors and of the Estate that an examiner be appointed to investigate and report to the Court on the apparent misconduct and irregularities. The information that an examiner could provide would be instrumental not only in the consideration of the appointment of a trustee, but also as a neutral analysis of mismanagement and avoidance issues that would be relevant to creditors in

9

considering any plan of reorganization that might be submitted on behalf of the Debtor. For these reasons, the appointment of an examiner would be in the best interests of creditors.

## VI.    GROUNDS EXIST TO LEAVE THE RECEIVER IN PLACE PENDING AN EXAMINER'S REPORT.

11 U.S.C. § 543(b)(1):

> A custodian shall deliver to the trustee any property of the debtor held by or transferred to such custodian, or proceeds, product, offspring, rents, or profits of such property, that is in such custodian's possession, custody, or control on the date that such custodian acquires knowledge of the commencement of the case.

Under 11 U.S.C. § 101(10)(A), a receiver appointed pre-petition is a custodian under § 543. In a Chapter 11 case such as this one, the Debtor serves as debtor-in-possession, with many of the rights and powers of a trustee. 11 U.S.C. § 1107(a). Thus, the Code would require that the receiver turn over control of the Debtor's operations and property to the Debtor, unless the Court alters that result.

The Court may excuse the receiver from these requirements "if the interests of creditors and, if the debtor is not insolvent, of equity security holders would be better served by permitting a custodian to continue in possession, custody, or control of such property". 11 U.S.C. § 543(d). The Code does not require immediate turnover by a custodian, and where a timely motion is filed by a party in interest to excuse compliance with § 543(b), "the receiver may retain possession without fear of being cited in contempt." In re Watkins, 63 B.R. 46, 48 (Bkrtcy. D. Colo. 1986).

The Code provides no guidance concerning the circumstances that would warrant such action. Commonly cited factors included "(1) whether reorganization is likely; (2) that funds are necessary for such a reorganization and funds exist which will be applied towards it; and (3) mismanagement." In re Powers Aero Marine Services, Inc., 42 B.R. 540, 544 (Bkrtcy. Tex. 1984). *See also* In re Bryant Manor, LLC, 422 B.R. 278 (Bkrtcy. D.Kan. 2010); In re Poplar Springs Apartment of Atlanta, Ltd., 103 B.R. 146, 150 (Bkrtcy. S.D. Ohio 1989). Some courts add an additional requirement: Whether turnover would be injurious to creditors. In re Northgate Terrace Apartments, Ltd., 117 B.R. 328, 332 (Bkrtcy. S.D. Ohio 1990).

1     Here, the funds of the Debtor have been systematically syphoned off for the personal use of Johnson, and/or for his other wholly-owned business interests. The representation of counsel for the Debtor's principal is that the Debtor is "out of business"; this is clearly not the case, as the Debtor continues to engage in sales, and maintains a valuable name, customer base, and online presence. What IS clear is that the Debtor's business attributes and revenues are being diverted. Considering the self-interests involved, it is not likely that the Debtor's own revenues will be applied toward its reorganization. In light of the pattern of gross mismanagement, the turnover of the Debtor's business to its own management would continue the injury to creditors of the Estate.

    The timing of the bankruptcy filing (the day after the Receiver took control), and the Debtor's complete lack of prior efforts to resolve its relationships with its creditors when its revenues appear sufficient to do so, suggest that the sole purpose of this bankruptcy filing was to terminate the receivership to allow the Debtor's principal to continue to divert the Debtor's revenues. Creditors need protection from the self-interested principal of the Debtor pending the report of an examiner who would investigate and report on the Debtor's past financial affairs and future prospects. <u>In re Cedar Falls Hotel Properties Ltd. Partnership</u>, 102 B.R. 1009, 1017 (Bkrtcy. N.D. Iowa 1989) [On a post-relief from stay sanctions motion, court noted that "[i]n this case, there was more than a 'mere' bad faith filing…. The Court is convinced that the Debtor filed bankruptcy for the singular goal of removing the state court appointed receiver and did not file bankruptcy to make a legitimate effort at reorganization."]

    As is indicated by the Declaration of Andrea D. Chan, the Receiver is disinterested, with no loyalties to any party in this case. Her efforts in a short period of time have been impressive. She is already in place, is working effectively with the Debtor's personnel, and is "up to speed" concerning the Debtor's affairs. She can provide the examiner with necessary documents and records for the examiner's analysis, as well as the benefit of her observations and conversations with the Debtor's staff. As such, her retention would be highly beneficial to the Estate. <u>In re Sundance Corp.</u>, 83 B.R. 746, 749 (Bkrtcy. D. Mont. 1988) ["I find McDougall has ably

11

performed his duties as receiver."]; In re KCC-Fund V, Ltd., 96 B.R. 237, 240 (Bkrtcy. W.D. Mo. 1989) ["The receiver appears to have done an outstanding job."]

## VII.   CONCLUSION.

Creditors of this Estate need protection from the self-interested and conflicted current management of the Debtor. "Cause" exists for the appointment of a Chapter 11 trustee, and such an appointment would be in the best interests of the Estate. At the very least, the Court should appoint an examiner to do an investigation the apparent gross misconduct and mismanagement of the Debtor by current management, leaving the Debtor's operations in the hands of the existing Receiver pending the examiner's report.

**RESPECTFULLY SUBMITTED,**

Date:  September 20, 2011          LAW OFFICE OF PAUL P. YOUNG

By:  /s/ Paul P. Young
         Paul P. Young
         Attorney for Judgment Creditor